162822 Chicago Police Sergeants' Association v. John Pallohusky Morning. I'm Ira Helfgatt. I'm the Deputy Plaintiff, L.A. Chicago Police Sergeants' Association. Good morning. Morning. I'm not sure if this is the right thing to do. Should it be up a little bit for me? No, I think you're fine, yes. Okay, fine. Thank you. Let me introduce the court. Again, my name is John Stimson. I represent John Pallohusky. This case presents the issue of whether or not the trial court erred in denying an existing exemption to Mr. Pallohusky for his widow's annuity from the police pension fund. The facts, very briefly, are these. Mr. Pallohusky is 60 years old and retired. He was married to a Chicago police sergeant, Mary O'Toole, and she died on July 7, 2010. As her surviving widow, the defendant is entitled to receive a widow's annuity from the Policeman's Annuity and Benefit Fund, which, I'm sure you're aware, is the third-party respondent to the citation at issue here. That pension benefit, the annuity, is $782.13 after income tax is withheld, as well as his pension. His health insurance premium of $890 is met at $782.13 a month. The fund, and indeed the annuity that we're here to discuss, was created by the Article 5 of the Illinois Pension Code. The code, Section 5-134, states that a widow's annuity shall be provided for the widows of policemen. Very straightforward. And then Section 5-218 says that all pensions and annuities granted under this article, and I'm going to delete a little bit of the language here to give you the essence of a very long paragraph. You pointed, there's a specific exemption for this. Not only a specific exemption, Your Honor, but one that is all-encompassing. It is a complete exemption for any payment made under this article. Before we get to the substance of it, could you address our jurisdiction for a minute and why this is a final and appealable order? I can. The order that was entered here was a turnover order by the trial court to the pension fund to deliver my client's monthly benefit to the plaintiff. The, there is no other action that the plaintiff could take on this citation as it relates to this particular pension benefit. It could go after other benefits, though. Theoretically. But if your client's pension. That's true. But, Your Honor, this is a final order because it is the, it is the, it is a discrete portion on which no other action can be taken by the plaintiff. Put it another way, if you were to accept the plaintiff's argument that this is not final and appealable, what you would do is put the plaintiff in a position where they literally could take no action against the pension fund further and literally deny that pension, the one that we're here to discuss, to my client. They, they, they, they, they, and that could be a final benefit. Or they could actually turn it over to the fund. Well, that's what we're here to decide. Has that been stated? Was the trial court order saying turn it over to the fund? That those funds are being held in escrow. Basically. They're not going to your client, and they're not going anywhere, and that's by court order. Yes. And also, the appellate court has determined that that particular escrow agreement, not agreement, escrow order is sufficient as bond for my client's appeal. That order's been already entered by this court. Let me ask you, is this where your opponent argues that National Life Real Estate Holdings enters into the discussion here? Yes. And can you explain that away if you wish to? Sure. In that case, there was indeed other action. In fact, none of the particular relief that the plaintiffs sought in that case was not granted by the trial court, leaving still steps to be taken on the citation at the trial court level in the supplementary proceeding. Our case is more like several other cases, some of which are cited by this court, D'Agostino v. Linge, where the court said that an order in the Section 2-1402 proceeding is said to be filed and the citation petitioner is in a position to collect against the judgment debit of a third party. That's the situation here. And the only thing that stands between the plaintiff and that is indeed this escrow order that we're talking about. Otherwise, they'd be collecting it right now. They would be collecting it right now. That's exactly right, Judge. Indeed, in Bessey Blank v. Farrell's, I cited in my brief, the court said in post-judgment garnishment proceedings, orders that terminate all or part of the garnishment proceeding are payable pursuant to Supreme Court Rule 304-B-4. Likewise, in Ray's statement, yes, by UCIS, also cited, a final order is one that disposes of the rights of the parties either with respect to the entire controversy or some definite separate portion thereof. Just before we leave this, you could go get a 304-A finding, though. If we were to say this is not within 304-B, you could go get a 304-A finding. If the trial court was amenable, yes, Your Honor. The end of the case law, it seems almost unrealistic. Unnecessary. But that is what happened in actual life. They did get an appeal because they did get a 304-A finding. And we can see you all here two years from now. Yes, and at significant expense as well as denial of my client's rightful. Because he should be getting attention now. He should be, indeed. Yes, exactly, Your Honor. I've only addressed this sufficiently for you. Let me then try to be brief. Not only does the pension code itself make a comprehensive exemption here, one that has found no better, the courts have not found any need to address, at least in my opinion, because it is so comprehensive. Also, there are sections 2-12-106 of the COSO procedure provides a similar exemption. A debtor's payment under a retirement plan is exempt from judgment, attachment, execution, distress, seizure, and satisfaction of debts if the plan is a public and query pension plan created under the pension code as now, here, and after amended. And it goes on to define that a retirement plan includes a public pension plan under Illinois Pension Code. This may be an unfair question to ask you, but given the statutory language, why was the court below convinced that Brannan and Clark controlled him? Frankly, I'm mystified, Judge. I think this is not a closed case. Clark addressed only IRAs. IRAs are dramatically different than the benefit that we're here to discuss. And the reason that Clark existed at all is because an IRA is, in fact, inheritable. And if the court were to have reviewed Clark more thoroughly, it would have found that the court itself said that the case was about non-spousal benefits. This is indeed a spousal benefit. There is no other way to interpret it, if I may. And Brannan said, Benefits to a spouse under any retirement plan scheme, qualified or otherwise, have always been protected and are exempt. And Clark addressed the unique situation where an IRA had been inherited by the child of the creator of the IRA. In those situations, the tax code requires them to be treated very differently. They have to be taken over a short period of time, for example. They have to take distributions. They can take as much out of the fund as they want. This benefit is not, first of all, not inheritable. My client's benefit goes away completely when he dies. And it was not granted to him by inheritance, but rather by function. Are you suggesting that we apply the Clark-Brannan analysis and rule in your favor, or are you suggesting we don't even get to that analysis because there's no ambiguity and it's clearly exempt? You don't get there, Your Honor, because Clark and Brannan both distinguish the case from spousal benefits. These cases do not apply here. And, by the way, the post-Clark cases that I cited in my brief show that very clearly. In Illinois Swa, the bankruptcy case, by the way, there is no Illinois authority interpreting Clark to date other than Brannan. But in Swa, that was an exemption for the half-interest in her ex-husband's IRA. And the court acknowledged Clark there and said that, but instead relied on the case, the Illinois case of Ingray-Blizak, B-Z-I-R-L-A-K. And it said that it found that the early exemption, similar to the forward exemption, used expansive language referring to any interest in the qualified plan and allowed the exemption to adhere in spite of the fact that Clark existed. And that, by the way, was an IRA case, not one that was covered by the exemption that we have in front of us here today. I would simply like to point out in conclusion that the pre-Clark cases that I cited in my brief, are very clear in stating that the benefit provided under the Illinois Pension Code are indeed exempt. And that the only real issue presented here is whether or not Clark and Brannan even apply here, which I've said earlier, they do not because they're not spousal benefits. They don't apply to spousal benefits. They don't apply to widow's annuities or pensions. They apply to IRAs entirely. Even the analysis of Clark doesn't cover the kind of benefit that we're talking about here. Again, the Illinois Pension Code is uncritical in stating that there's an exemption for this kind of benefit regardless of what it's called. Retirement benefit, annuity, pension, any payment whatsoever is exempt under the Illinois Pension Code. Thank you for your time. Give me your 10 minutes to rebuttal then. Thank you. Thank you. Mr. Helfka? It's an interesting case. I guess they all are. But this is, I think, a particularly interesting case. Let me move this down. Can you hear me now? Alright, thank you. The subject of widow's benefit is not exempt under Illinois law. Clark makes it very clear. The Supreme Court held that an inherited IRA wasn't exempt from collection under Section 522 of the U.S. Bankruptcy Code because an inherited IRA wasn't a qualified retirement plan. It didn't meet the prerequisites for being a qualified retirement plan. Did that case deal with the pension statute? I'm sorry? Did that case deal with the pension statute? It did not. It dealt with the bankruptcy codes. And did it deal with a specific exemption like this case? Well, it didn't specifically deal with it, but when we get into Brannett, it does deal with one of the exemptions in this case because, as you well know, in Brannett, this court applied Clark to defeat a Section 12-1006 exemption claim over an inherited IRA. Appellant in this case is claiming two exemptions. But Brannett, the premise of Brannett, if I understand it correctly, is that there's an ambiguity as to whether that statute applies. Where is the ambiguity here as to whether this statute applies to a pension home benefit? Well, I don't believe that ultimately this court decided there was an ambiguity. We did decide that 12-106 did not apply to an inherited IRA. Yes, but the premise of that analysis is that there was an ambiguity. Okay, but they ultimately decided that way. So they looked to what the purpose is. Is it a retirement plan? Does it really have anything to do with retirement? They said, no, it doesn't. But my question is, why do you get there? Okay, so I believe that under 12-106 it's a subtle question because we've decided 12-106 applies to retirement plans, qualified retirement plans. That's the language of 12-106. And that's the application of Brannett. Because under Brannett, this court found that Clark was controlling. 12-106 was intended to be the alimony equivalent of Section 522 of the Bankruptcy Code and that there was no indication that the legislature in exempting retirement plans intended to exempt a non-spouse's interest in an inherited IRA account. And this is the critical part, which objectively served no retirement purpose. Counsel, what do we do with the pension code? I'm going to get to that. I promise. So looking at the legal characteristics of the fund here, it's clear it's not a retirement account. It's not exempt under 12-106 of the code. And as set forth in our brief at pages 14, note 4, the widow's annuity at issue is not a retirement account because it is not payable upon the widow's retirement, but rather upon the death of the spouse. Doesn't the pension code specifically address pensioners, annuitants? Absolutely, Judge, and I want to get to that. I promise. Therefore, it's our intention the widow's benefit is neither a retirement account nor exempt pursuant to 12-106. Now, as promised, Section 5. I'm going to go back to 12-106 for a second because there's an A and a B, right? A is a retirement plan if it is intended in good faith to qualify as a retirement plan under the Internal Revenue Code, and that's what Brandt looked at. And OR a public employee pension plan created under the Illinois Pension Code, and that's what we have here. So those are two different parts of 12-106. Okay, so we've knocked out A because they're contending both under A. You don't need both. You only need one or the other. That's what they're contending, so we've addressed that. Let's go to the pension part now, as promised. Okay, which I guess refers you, as Justice Connors suggested, to the pension code. Absolutely. Okay. This Court, in in-ring marriage—I'm sorry, wrong citation. The widow's benefit isn't exempt under 5-218 of the pension code. This Court, this very Court, gave us guidance in Reynolds v. The Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago, which we cite in the brief. When this Court noted that the primary purpose of a widow's annuity is to provide for a widow or a widower in her retirement, this Court stated, quote, One of the most important public policy matters facing many state and municipal governments today is how to assure that individuals who have spent their work life in public service will have adequate annuity income from funds not unlike—in that case, it was the fireman's annuity, but it's the same things— not unlike the fireman's pension fund to meet their needs and or the needs of the widower and children during their retirement years. That's the purpose of the widower's benefit. The life center screwed up, though, because it made it payable upon the death of the spouse. But the reality is that we exempt these pension benefits, not so that somebody can have money to freely go spend the moment somebody dies, but rather to provide for them in their retirement. So a widow has to be retired to receive the benefit? Yes, Judge. That was the intention of setting these exemptions aside. But it doesn't require that under the Code. That may be the intention, but you don't get to that if the statutory language says something else. Well, clearly, there is a divergence between how this Court interpreted what the pension code should have done and what the legislature did do in that provision. There's no question about that. But in my view, that means that that pension benefit, because the widower benefit is not a qualified retirement benefit under Clark and Brannan, not by any stretch of the imagination, it shouldn't be exempt. Did the Reynolds case specifically apply to this issue by the widower's benefit? I don't have it in front of me, but I quoted to Your Honor specifically what it said. I believe I quoted it adequately. In terms of what the purpose was? Absolutely, Judge. But not what the language is? Absolutely, Judge. I can't deny that. So there is that problem. So now we have a benefit for a widower that clearly does not meet the Clark and Brannan standards of a qualified retirement plan. It's funding money. It's money to go spend. What's unclear about the Pension Act, though? Is there anything pointed out, if you would? What's unclear? Well, I cannot say that the language, the expressed language is unclear. I can tell you that given this Court's finding of the rationale for this provision in the Retirement Board of the Fireman's Annuity, that it didn't meet the standards of what this pension benefit should have been. Let me ask you a different question. Yes, ma'am. And I don't mean to take you off the record, but you can go after his pension or somebody can go after his pension directly, right? I mean, before the pension board. Correct. Not you specifically, but that his pension board, his pension is subject to being revoked if he is found guilty of a felony, which he was connected to his job duties, which I don't know whether this is or isn't. But you can go after his pension directly. As I understand it, it's not going after his pension, it's his contributions. Okay. I might be wrong about that, but I believe that that's what we can go against. But that's where misconduct can make his pension vulnerable in some way. Well, I believe that now that this court has denied his appeal to vacate his guilty plea, that he would, if he wished, he could make application for the pension, but it would be denied because of his felony conviction. Or could he? Yes. That would be up to the pension board. Yes. Okay. Counsel, sum up unless we have other questions. I have one last question. Go ahead. What is the relevance in your mind of the fact that he didn't participate in the citation proceeding until the motion to reconsider? I mean, you spent a fair amount of time on that in your brief, and I'm wondering what the relevance is. I'm not really sure who started all that conversation, but the essence of it is that it's a 213-01 motion to vacate. He didn't, you know, demonstrate due diligence or any underlying defense, et cetera, all the requirements under 213-01. The response, I think, was in the brief that we didn't give him any notice whatsoever. And putting all that aside, what's the relevance? Do you think it deprives us of jurisdiction somehow? Do you think it makes an improper 1301 to the final court lost jurisdiction? No. What do you say? It's an improper 213-01. No, it's not. It was properly granted by the trial court. Oh. Or denied. It was denied by the trial court. Denied, yes. Yes. Absolutely. All right. So help us with this, counsel. I believe that under the facts of this case and under the law of Clark and Brandt, the widow's benefit here is neither a qualified retirement account nor exempt pursuant to Section 12-1006 or Section 5-218 of the pension code. And although the pension code doesn't expressly create this issue, this court's ruling in the retirement board of the fireman's annuity indicates that the purpose of this pension should have been for retirement and the retirement of the widower. Thank you. Thank you. All right. Your ten-minute rebuttal, then, counsel. Thank you. Thank you. The plaintiff, as I pointed out in my reply brief, has tried here to ignore the pension code as an authority for the exemption that we've claimed here, claiming that because 12-1006 exists and apparently was the case, was the statute that was addressed in Brandt, that somehow the pension code doesn't apply. As the court has correctly observed, however, the Section 2-1006 of the court of civil procedure indeed specifically addresses and exempts those payments made under the Illinois pension code. So whether it's even under Brandt, which involved Section 12-1006, this benefit is exempt. That statute says that it's exempt if it's part of the pension code. The plaintiff's argument, as I understand it, is that the pension code says what it says and makes the exemption that we claim that it does, that is all-encompassing, but that it shouldn't be that way. But the legislature, I believe, the court has screwed up by writing that law the way it did. And I would only point out that since Clark was decided, which I believe was in 2013, the legislatures had ample opportunity to go back and change any mistake that claims existed. It has not done so. And the courts that have held forth on Clark universally applied pension benefit exemptions and benefits to every kind of retired benefit other than an inherited IRA benefit. That was the specific facts that existed in Clark. And incidentally, the plaintiff argued that Clark decided that the IRA was not a qualified plan. That's not true. It is a qualified plan, and the court found that to be the case. It found, however, that by operation of the IRS code, and the fact that it was inherited by a child, that it could be changed. The rules change, and therefore the court was unwilling to call that a retirement benefit. I wanted to simply raise that point because, again, both Section 12-106 specifically defines a pension benefit or any benefit under the Illinois Pension Code as a retirement benefit. And again, both Clark and Brannan both exempt spousal benefits from their discussion completely. So the argument that the legislature is wrong here, first of all, finds no support in the law that I know of. This court's job is to determine what the legislature said, not what it should have said. And by the way, it has had plenty of opportunity to change what it said, and it has not done so. Changing it this way, where it says, by the way, undoubtedly would wreak havoc among recipients of spousal retirement benefits of all kinds. In that law, if not in the United States, which is, the Illinois is consistent with exemptions that exist for spouses. The plaintiff's comment about this benefit being, I believe it was, but funny money, I'm not entirely sure what that means. But the fact is, there is no evidence to suggest whatsoever, none in the record whatsoever, to suggest that my client is getting money that he doesn't need. There just is no evidence whatsoever that $782 a month is somehow a discretionary fund. Zero. And plaintiff has cited none. I'd like to finish by just addressing the nature of the motion that brought us here today. The motion that we filed in the trial court was a motion, was a combination motion. It was a motion to dismiss, to vacate under 2-1301 and a motion for reconsideration of the court's order denying the exemption on plaintiff's motion for turnover. So there were two parts to it. This court doesn't need to decide that this was a 2-1301 motion and apply that law because it was also a motion for reconsideration. But more importantly, the trial court heard our motion. The trial court, that motion was fully briefed, not only with response or reply to that motion, but also serve response, serve reply before the court ever heard this motion and made its ruling. On the merits of your motion. On the merits of our motion. It discussed in its opinion at length our having met the burden for bringing the motion that we brought, that is to vacate and to reconsider. And we also pointed out in our reply brief that the standard appeal that would apply to such a determination by the court if it wanted to look into this issue would be an abuse of discretion. Because the court did indeed decide that case and stated its reasoning for allowing or hearing, I should say, our motion to dismiss. But I just want to remind me, was the motion to reconsider brought within 30 days? Yes, ma'am. Thank you. It was indeed. 2-1301 motion. Mm-hmm. So the notion that this court doesn't have jurisdiction, and I have to add, by the way, that the argument about it not having jurisdiction to hear this motion was raised in front of this court and was the motion to dismiss the appeal on that basis was denied. I think that was on 304B, where there was a fine. That was what the case was. That's correct. Yes. Yes. Exactly. Yes. Correct. And summing up, counsel, thank you. Anything else? I don't know if there's much else I need to say other than it's that the statute is extremely clear. It is not conchanged. Court didn't address it and doesn't change that statute. This is a matter of legislative interpretation, and the legislation is very clear. Thank you very much for your time. I appreciate it. Thank you. Gentlemen, thank you very much for the arguments you offered before this court today, and you will be hearing from us shortly. Thank you. Thank you, gentlemen.